# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| JOSEFINA LOZANO, ROBERT PIERCE, DORICE PIERCE, and DELLA SIMS, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 1:19-cv-06411 |
| CITY OF ZION, a municipal corporation, et al., | ) ) ) | Judge Mary M. Rowland |
| Defendants. | ) ) | |

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT

Defendants, CITY OF ZION, BILLY MCKINNEY, JACQUELINE HOLMES, RICHARD IANSON, and WARREN FERRY, by and through one of their attorneys, MICHAEL J. ATKUS of KNIGHT HOPPE KURNIK & KNIGHT, LTD., submit this Memorandum of Law in Support of their Motion to Dismiss Plaintiffs' Second Amended Complaint, and state as follows:

## INTRODUCTION

This case, brought pursuant to 42 U.S.C. § 1983 presents a constitutional challenge to Section 10-180 of the City of Zion's Municipal Code which provides for rental housing inspections and certification. The Plaintiffs, a landlord and four (4) of her tenants, initially filed suit on September 26, 2019. The City of Zion amended Section 10-180 on November 5, 2019. Plaintiffs subsequently filed a one-count Second Amended Complaint ("SAC"), alleging that the Amended Section 10-180 runs afoul of

1

the Fourth Amendment of the U.S. Constitution on its face and as-applied to them. The SAC seeks injunctive relief, monetary damages, and declaratory relief.

As more fully argued below, the Court lacks subject matter jurisdiction over this action because the SAC fails to demonstrate a live "Case" or "Controversy" as required by Article III of the U.S. Constitution in order to confer jurisdiction to the federal courts.

## SUMMARY OF THE SAC'S FACTUAL ALLEGATIONS

Josephina Lozano ("Lozano") is a landlord who owns two multi-family buildings at 1503 and 1509 27th Street in Zion, Illinois. SAC ¶ 7. Robert Pierce and Dorice Pierce ("the Pierces") are two of Lozano's tenants, who live in Unit #7 at the 1503 27th Street address. SAC 8. Della Sims ("Sims") is also one of Lozano's tenants; she resides in Unit #1 at the 1509 27th Street address. SAC ¶ 9.

The City of Zion ("City") is a township duly organized and existing under the laws of the State of Illinois. SAC ¶ 10. Bill McKinney ("McKinney") is and was, at all relevant times, either the Mayor and Commissioner of Public Affairs for the City, or the Commissioner of Building, Property & Zoning for the City charged with implementing the rental inspection program. SAC ¶ 11. Jacqueline Holmes ("Holmes") is and was, at all relevant times, the Commissioner of Building and Public Property. SAC ¶ 12. Richard Ianson ("Ianson") is and was, at all relevant times, the Director of the City's Building Department. SAC ¶ 13. Warren Ferry ("Ferry") is and was, at all relevant times, an Inspector for the City's Building Department. SAC ¶ 13.

In 2015, the City enacted a rental inspection ordinance. SAC ¶ 20. A copy of the 2015 ordinance is attached to the SAC and this Memorandum as Ex. A. The City began implementing the rental inspection program in 2016. SAC ¶ 33.

On May 25, 2016, Ianson sent Lozano a letter demanding that she submit an application for a Certificate of Compliance ("COC") and notifying her that she would need to schedule inspections of her rental properties once the application was approved. SAC ¶ 38. On June 23, 2016, Lozano submitted her application. SAC ¶ 39. On June 29, 2016, the City informed Lozano that her application was incomplete because she had substituted the provided affidavit with her own and instead must sign the affidavit the City provided. SAC ¶ 40. After receiving a final notice of her incomplete application on July 5, 2016, Lozano reapplied and was approved. SAC ¶ 41.

Lozano then scheduled inspections for September 8, 2016, and sent a memorandum informing her tenants of the scheduled inspecting and inviting them to let her know if they did not consent to a search of their homes. SAC ¶ 42. The Pierces and Sims refused to consent to an inspection, and sent letters to the City explaining their non-consent. SAC ¶¶ 44-45.

For three years, the City did not pursue inspections of the Pierces' home or Sims's home. SAC ¶ 47. Lozano never received a COC for these homes, but the City took no action to prevent her from continuing to rent to them. SAC ¶ 47.

Each year from 2016 through 2019, the Pierces and Sims refused to consent to an inspection and sent the same letter to that effect. SAC ¶ 49. During that time,

the City did not inspect the Pierces' home or Sims's home; nor did the City obtain an administrative warrant authorizing the search of their homes. SAC ¶ 49.

On August 20, 2019, Ferry sent letters to Lozano about her uninspected properties. SAC ¶ 50. The letters informed Lozano that she must schedule an inspection for the uninspected properties by September 29, 2019, or her applications would be referred to the City Attorney for review and possible initiation of legal proceedings. SAC ¶¶ 50-51.

On November 5, 2019, the City amended its rental inspection ordinance. SAC ¶ 63. The Amended Ordinance is attached to the SAC and this Memorandum at Ex. A1.

## ARGUMENT

### I. STANDARD OF REVIEW.

Where a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) challenges whether subject matter jurisdiction is evident on the face of the Complaint, then the Court analyzes the motion pursuant to Rule 12(b)(1) as any other motion to dismiss, by assuming for purposes of the motion that the allegations in the complaint are true. *See United Phosphorus, Ltd. v. Angus Chem. Co.*, 322 F.3d 942, 946 (7th Cir.2003) (en banc), overruled on other grounds by *Minn–Chem, Inc. v. Agrium, Inc.*, 683 F.3d 845, 852 (7th Cir. 2012). Federal courts have subject-matter jurisdiction only if constitutional standing requirements also are satisfied. *Collier v. SP Plus Corp.*, 889 F.3d 894, 896 (7th Cir. 2018). "The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing" standing. *Spokeo Inc. v. Robins*, 136

S. Ct. 1540, 1547 (2016).  "[A]t the pleading stage, the plaintiff must clearly allege facts demonstrating each element [of standing]."  *Id.*, quotations omitted.

## II. DISCUSSION OF SUBSTANTIVE LAW AND PLAINTIFFS' CHALLENGE OF THE AMENDED ORDINANCE.

The Fourth Amendment protects individuals "against unreasonable searches and seizures" of "their persons, houses, papers, and effects."  U.S. Const. amend. IV. In *Camara v. Mun. Court of City & Cty. Of San Francisco*, 387 U.S. 523 (1967), the Supreme Court recognized that this protection extended to an individual's right to be free from a rental inspection of her home absent an administrative warrant. Plaintiffs do not contend that they were subject to unreasonable, warrantless searches pursuant to the Amended Ordinance; nor do they contend that the Amended Ordinance authorizes and thus subjects them to warrantless, or otherwise unreasonable rental unit inspections in the future.  Rather, Plaintiffs' claim is predicated upon the doctrine of unconstitutional conditions, which "precludes the government from coercing the waiver of a constitutional right … by attaching conditions that penalize the exercise of a constitutional right." *United States v. Ryan*, 810 F.2d 650, 656 (7th Cir. 1987), citing *United States v. Jackson*, 390 U.S. 570, 583 (1968).  In other words, Plaintiffs' claim is that the Amended Ordinance attaches conditions that penalize them for their exercise of the right to be free from rental inspections of their property absent an administrative warrant.

Specifically, Plaintiffs' challenge to the Amended Ordinance is predicated upon two hypothetical situations in which their refusal to consent to warrantless rental

inspections could result in the denial of a COC. Sections 10-180(2)(a) and (c) prohibit leasing or occupying, respectively, any residential rental property without a current and valid city-issued COC. Section 10-180(5)(c) directs a code official to issue a COC "upon finding that there is (i) no condition that would constitute a hazard to the health and safety of the occupants and (ii) that the residential rental property is otherwise fit for occupancy." In other words, no COC may be issued without a rental inspection. Plaintiffs fear that upon their refusal to consent to a warrantless inspection, the City will (presumably in bad faith) decline to seek an administrative warrant, conduct no inspection, and be precluded from issuing a COC, leaving both continued leasing and occupation unlawful. SAC ¶ 71. Additionally, Plaintiffs fear that if the Lake County Circuit Court denies the City's request for an administrative warrant, that the City will decline to reapply for the warrant (again presumably in bad faith), conduct no inspection, and be precluded from issuing a COC, leaving both continued leasing and occupation unlawful. SAC ¶ 72.

The SAC does not suggest that the City has declined to seek administrative warrants for the rental inspection of Plaintiffs' units under the Amended Ordinance, nor does it suggest that the Lake County Circuit Court has denied any requests made pursuant to Section 10-180(5)(g) of the Amended Ordinance for administrative warrants authorizing rental inspections of their units.

### III.  THE SAC FAILS TO CLEARLY ALLEGE FACTS DEMONSTRATING AN ARTICLE III "CASE" OR "CONTROVERSY."

"Article III of the Constitution limits federal courts' jurisdiction to certain 'Cases' and 'Controversies.'" *Clapper v. Amnesty Intern. USA*, 568 U.S. 398, 408 (2013).  In other words, "[u]nless a case or controversy is presented, no federal court has the jurisdiction to decide whether a federal, state, or local law is constitutional." *Schrimer v. Nagode*, 621 F.3d 581, 584 (7th Cir. 2010).  "One element of the case-or-controversy requirement is that plaintiffs must establish that they have standing to sue." *Clapper*, 568 U.S. at 408 (quotations omitted).  Article III standing consists of three elements: "the plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo Inc.*, 136 S. Ct. at 1547.  "[A] plaintiff must demonstrate standing separately for each form of relief sought." *Friends of the Earth, Inc. v. Laidlaw Environmental Servcs. (TOC), Inc.*, 528 U.S. 167, 185 (2000).  An injury in fact is one that is "concrete, particularized, and actual or imminent." *Clapper*, 568 U.S. at 409.  Plaintiffs claim both threatened future harm and past harm.

### A. Plaintiffs Lack Standing to Seek Injunctive Relief.

Plaintiffs seek to enjoin enforcement of the Amended Ordinance to prevent future injury, thus, Plaintiffs bear the burden of showing that future injury is imminent.  "Although immanence is concededly a somewhat elastic concept, it cannot be stretched beyond its purpose, which is to ensure that the alleged injury is not too

speculative for Article III purposes – that the injury is *certainly* impending." *Clapper*, 568 U.S. at 409, quotations omitted (emphasis in original). "[T]hreatened injury must be *certainly impending* to constitute injury in fact, and … "[a]llegations of possible future injury are not sufficient." *Id.*, quotations omitted (emphasis in original).

The future injuries alleged in the SAC, i.e., denials of COCs, are not *certainly impending*, but merely *possible*. Although Plaintiffs have declared their refusal to consent to warrantless rental inspection searches, the City has not indicated that it will decline to seek administrative warrants to authorize the inspections. The Courts do not "endorse standing theories that rest on speculation about the decisions of independent actors." *Id.* at 414. Additionally, "[f]or purposes of standing to seek injunctive relief against future harm, courts generally assume that litigants 'will conduct their activities within the law …'" *Simic v. City of Chicago*, 851 F.3d 734, 738 (7th Cir. 2017), quoting *O'Shea v. Littleton*, 414 U.S. 488, 497 (1974). In other words, Plaintiffs cannot predicate their standing to sue upon sheer speculation that City officials will decline to seek administrative warrants to authorize inspection of the Plaintiffs' rental units and in effect penalize them for exercising their constitutionally protected rights. Moreover, the Circuit Court of Lake County has not denied any requests for administrative warrants authorizing rental inspections of the Plaintiffs' units. Plaintiffs cannot predicate their standing to sue upon sheer speculation that it might in the future because "[i]t is not possible for a litigant to prove in advance that the judicial system will lead to any particular result in his case." *Id.* at 413-414, quotations omitted.

Other district courts in the Seventh Circuit have consistently declined to entertain requests to enjoin similar ordinances in the face of comparable allegations of threat of future harm based on failure to demonstrate Article III case or controversy requirements. In *Hometown Co-op. Apartments v. City of Hometown*, 515 F. Supp. 502, 505 (N.D. Ill. 1981)(Aspen, J.), plaintiff sought injunctive and declaratory relief from defendant's point-of-sale inspection ordinance, arguing that it ran afoul of the Fourth Amendment because it had "the effect of coercing involuntary consent to a warrantless search at the risk of substantial penalty in situations in which the city either refuses to or cannot procure a warrant…" *Id*. at 504. The court granted summary judgment for the defendant because "the tendered case involve[d] uncertain and contingent future events that may not occur as anticipated, or indeed may not occur at all," noting that "[s]peculation about the possibility of future unconstitutional acts of officials under a statute is insufficient to create a ripe case or controversy." *Id*. at 504-505. Similarly, in *Tobin v. City of Peoria, Ill.*, 939 F. Supp. 628 (C.D. Ill. 1996)(Mihm, J.), plaintiffs sought a judgment declaring the defendant's inspection ordinance unconstitutional as applied arguing that under the ordinance "if Plaintiffs refuse[d] consent and the City decline[d] to pursue a warrant, Plaintiffs [would have been] forced to consent to a warrantless search to obtain a valid Certificate of Registration in order to legally rent their premises." *Id*. at 635. The court declined to entertain the constitutional challenge on ripeness grounds because the "contingent possibility [was] insufficient to render the Inspection Ordinance unconstitutional because the alleged injury is not immediate and real." *Id*. Finally,

the court in *Makula v. Village of Schiller Park, Ill.*, 1998 WL 246043 (N.D. Ill. Apr. 30, 1998)(Coar, J.) reached the same result in a challenge to the defendant's ordinance requiring a license to operate multi-family dwellings, noting that "[t]he court will not presume that the Village will attempt to punish those who refuse entry by refusing to attain a warrant and thus, preventing the recalcitrant owner from gaining or renewing his or her license." *Id*. at *7.

This case is similar to *Hometown Coop*, *Tobin*, and *Makula* and should yield the same result. The analyses set forth in these cases remain consistent with the Supreme Court's later Article III jurisprudence, such as *Clapper* and *Spokeo*, and although they discuss the case or controversy requirement in terms of ripeness rather than standing and "injury in fact," they arrive at their conclusions based on the overarching concern of Article III in cases in which plaintiffs claim a threat of future harm, namely, "ensur[ing] that the alleged injury is not too speculative." *Clapper*, 568 U.S. at 409.

## B. Plaintiffs Lack Standing to Seek Money Damages.

In addition to the threat of future harm, the SAC also alleges a standing theory predicated upon past harm. It is important to note again that the SAC does not allege that Defendants have conducted any search or seizure of the Plaintiffs, their homes, or their property; neither does it allege that the Defendants have penalized or fined Plaintiffs, or denied them a COC for asserting their Fourth Amendment right to refuse consent to a rental inspection. Rather, the past harm Plaintiffs allege are (1) fear of business losses and eviction and attendant emotional distress and (2) loss of

time expended on compiling documents and talking with lawyers about their situation. SAC ¶¶ 80-86.

Neither of these claimed injuries is sufficient to confer Article III standing on Plaintiffs. "[A]nticipation, fervor of advocacy, speculation, or even fear is not enough by itself to establish standing." *Schmidling v. City of Chicago*, 1 F.3d 494, 499 (7th Cir. 1993). Moreover, compiling documents and speaking with one's lawyers do not create standing because potential litigants "cannot manufacture standing by merely inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending." *Clapper,* 568 U.S. at 416. "If the law were otherwise, an enterprising plaintiff would be able to secure a lower standard for Article III standing simply by making an expenditure based on a nonparanoid fear." *Id.* at 416. Ultimately, allowing Plaintiffs to bring this action based on fears they experienced and costs they incurred "in response to a speculative threat would be tantamount to accepting a repackaged version of [their] first failed theory of standing." *Id.* at 416.

### C. Plaintiffs Lack Standing to Seek a Declaratory Judgment.

"In determining whether a claim for declaratory relief presents a case or controversy under Article III of the Constitution, 'basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" *Simic*, 851 F.3d at 740, quoting *Preiser v. Newkirk*, 422 U.S. 395 (1975). As discussed above, there is no immediate controversy between the parties, and as such, the court lacks

jurisdiction to issue a declaratory judgment. *See Simic*, 851 F.3d at 740 (finding no standing to seek declaratory judgment where there was no standing to seek injunctive relief or monetary damages).

## CONCLUSION

For all the above-argued reasons, the Defendants respectfully request that this Honorable Court dismiss Plaintiffs' Second Amendment complaint for lack of subject matter jurisdiction.

Respectfully Submitted,

/s/ Michael J. Atkus

## <u>CERTIFICATE OF ELECTRONIC SERVICE</u>

I hereby certify that on December 17, 2019 the foregoing **Defendants' Memorandum of Law in Support of their Motion to Dismiss Plaintiffs' Second Amended Complaint** was electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following CM/ECF participants.

Robert Andrew Peccola, rpeccola@ij.org, paralegal@ij.org

Benjamin E. Waldin, bwaldin@eimerstahl.com, fharvey@eimerstahl.com

James W. Joseph, jjoseph@eimerstahl.com, erogers@eimerstahl.com, fharvey@eimerstahl.com

Michael Aaron Albert, albert@dlglawgroup.com

Cynthia Sara Grandfield, grandfield@dlglawgroup.com

K. Austin Zimmer, zimmer@dlglawgroup.com, docketing@dlglawgroup.com

Michael Jude Atkus, matkus@khkklaw.com, lgreenberg@khkklaw.com

William W. Kurnik, bkurnik@khkklaw.com, kstocco@khkklaw.com


/s/ Michael J. Atkus

KNIGHT, HOPPE, KURNIK & KNIGHT, LTD.
Attorneys for All Defendants CITY OF ZION,
BILLY McKINNEY, JACQUELINE HOLMES,
RICHARD IANSON, and WARREN FERRY
5600 North River Road, Suite 600
Rosemont, Illinois 60018-5114
Telephone:    847/261-0700
Facsimile:    847/261-0714
E-Mail:        matkus@khkklaw.com