IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOSEFINA LOZANO and ROBERT AND DORICE PIERCE, | |
| Plaintiffs, | No. 19-cv-06411 |
| v. | Judge John F. Kness |
| CITY OF ZION, *et al.*, | |
| Defendants. | |

**MEMORANDUM OPINION AND ORDER**

  This action challenges the City of Zion's rental housing inspection ordinance. Under that scheme, which the City adopted as amended in November 2019 (the "Amended Ordinance"), lessors of residential properties must obtain from the City a "certificate of compliance" with various City housing regulations. To obtain a Certificate, lessors must, among other tasks, arrange for City officials to inspect the rental properties. If the property passes inspection, the Amended Ordinance states that the City "shall issue" a Certificate, and the property may then lawfully be leased.

  In 2018, Plaintiffs Robert and Dorice Pierce, who are rental tenants in the City, refused to permit a warrantless inspection of their property as required by the predecessor to the Amended Ordinance. Yet the City did not take any steps at that time to enforce the ordinance against these Plaintiffs. As a result, the Pierces continued to live in their uninspected property—in continuing violation of the then-current inspection ordinance.

That uneasy détente ended in 2019, when the City sent a letter to Josefina Lozano, the Pierces' landlord, ordering Lozano to obtain a Certificate for the Pierces' unit. But rather than complying with the City's demand, all three Plaintiffs, collectively convinced that the statute's constitutionality rested on a shaky foundation, chose to bring this suit against the City.

Defendants now seek to dismiss this action based on what Defendants say is Plaintiffs' lack of standing to sue. In Defendants' view, any perceived harm to Plaintiffs is too speculative to create a justiciable case or controversy. As explained below, however, there exists a substantial risk that Plaintiffs' ongoing violation of law will result in them being subjected to enforcement actions by the City. Because Plaintiffs have alleged a sufficient injury to establish Article III standing for their claims, Defendants' motion to dismiss is denied.

**I.   BACKGROUND**

In response to a growing number of local rental properties, the City of Zion passed an ordinance that requires inspections of rental properties.[1] (Dkt. 25 at ¶¶ 20–23.) Explaining the ordinance's purpose, the City's mayor asserted that the City was suffering from an "overabundance of non-owner-occupied residential rental properties." (*Id.* ¶ 21.) The ordinance requires a rental property owner to obtain a Certificate to lawfully rent properties. (*Id.* ¶ 26.) To obtain the Certificate, rental property owners must arrange for rental units to be inspected by City officials every

---

[1] In deciding a Rule 12(b)(6) motion to dismiss, the court must accept all factual allegations in a complaint as true and take them in the light most favorable to the plaintiff. *See Proft v. Raoul*, 944 F.3d 686, 690 (7th Cir. 2019).

year.[2] (*Id.*) Absent a valid Certificate, rental property owners can be fined up to "$750.00 for each day the violation continues." Zion Municipal Code § 10-180(9)(a) (2015); (Dkt.25 ¶ 30). In 2019, the City amended the ordinance to add two relevant provisions. One provision prohibits the issuance of any fines or penalties where an owner, property agent, or occupant has "refus[ed] to permit the city to perform an inspection." Zion Municipal Code § 10-180(h)(3) (2019). Another amendment clarified the City's "right to seek an administrative search warrant . . . solely for the purpose of conducting said inspection." *Id.* at § 10-180(e)(7).

Plaintiff Josefina Lozano is a rental property owner in the City. Lozano owns and rents several units, including one unit occupied by the Pierces. Following the 2015 amendments, the City sent letters to rental property owners notifying them of the new requirements. (Dkt. 25 ¶ 34.) Lozano received such a letter on May 25, 2016. (*Id.* ¶ 38.) The letter informed Lozano that inspections would be required of all her properties before the City would issue her a Certificate. (*Id.*) In July, Lozano submitted, and the City approved, her application. (*Id.* ¶ 41.) In September 2016, Lozano attempted to schedule inspections with each of her tenants. (*Id.* ¶ 42.) But the Pierces refused to consent to an inspection of their home and sent a letter to the City stating their lack of consent. (*Id.* ¶¶ 44–45.) Because City did not inspect the property, Lozano never received a Certificate for the Pierces' unit. (*Id.* ¶ 47.) For the next three years, the City took no further action to prevent Lozano from continuing to rent the unit, and the Pierces continued to refuse inspection into their rental unit.

---

[2] If all units at a property were found to have no code violations, then a two-year Certificate would be issued. (Dkt. 25 ¶ 26.)

(*Id.* ¶¶ 47, 49.) It is undisputed that Lozano never received a Certificate for the Pierces' residence.

Things changed in August 2019, when the city inspector sent a letter to Lozano ordering an inspection of the Pierces unit within 30 days. (*See id.* Exh. D.) The letter threatened that continued noncompliance with the ordinance could result in Lozano's application being "refer[ed] to the City Attorney" or the "initiation of legal proceedings." (*Id.*) Lozano and the Pierces filed this complaint shortly after receiving the letter.

Plaintiffs seek a declaratory judgment that the rental unit ordinance is unconstitutional under the Fourth Amendment, as well as monetary damages under 42 U.S.C. § 1983. Before the Court now is Defendants' motion to dismiss, which is fully briefed (Dkt. 26; Dkt. 33; Dkt. 34). Defendants argue that Plaintiffs lack standing to bring their claim, as they have not alleged an injury sufficient to satisfy the Article III case-or-controversy requirements.

## II.    LEGAL STANDARD

Parties invoking federal jurisdiction bear the burden to establish standing. *Leweert v. P.F. Chang's China Bistro, Inc.¸* 819 F.3d 963, 966 (7th Cir. 2016). To establish Article III standing, a party must prove that: (1) it suffered an injury in fact; (2) the injury is fairly traceable to the challenged conduct; and (3) the injury is likely to be redressed by a favorable judicial decision. *Id.* (citing *Hollingsworth v. Perry*, 570 U.S. 693, 704 (2013)). To satisfy the "injury in fact requirement, the plaintiff must establish that he has sustained or is immediately in danger of

4

sustaining some direct injury." *Tobin for Governor v. Ill. State Bd. Of Elections*, 268 F.3d 517, 527–28 (7th Cir. 2001); *Big Shoulders Cap. LLC v. San Luis & Rio Grande R.R., Inc.*, — F.4th —, 2021 WL 4005884, at *4 (7th Cir. Sept. 3, 2021) ("An injury in fact must be concrete and particularized as well as actual or imminent"). Mere speculation is "not enough to establish an injury in fact." *Scanlan v. Eisenberg*, 669 F.3d 838, 842 (7th Cir. 2012) (quoting *Wis. Right to Life, Inc. v. Schober*, 366 F.3d 485, 489 (7th Cir. 2004)).

### III. DISCUSSION

Defendants' motion presents one argument for dismissal: Plaintiffs have not alleged sufficient facts to establish Article III standing. Specifically, Defendants argue that Plaintiffs have not yet suffered an injury sufficient to create a live "case or controversy" for Article III purposes. U.S. Const. art. III § 2. Defendants argue that, because the City has not yet imposed any fines or taken any legal action against Lozano or her tenants, any injury Plaintiffs allege is merely possible, rather than "certainly impending." (Dkt. 27 at 8.) In support of their argument, Defendants rely on *Clapper v. Amnesty International USA*, 568 U.S. 398 (2013), which requires an injury to be "certainly impending" to satisfy Article III's live case or controversy requirement. *Id.* at 401–02.

In *Clapper*, the plaintiffs contested a section of the Foreign Intelligence Surveillance Act of 1978 ("FISA"). That provision allowed the government to obtain information and surveil individuals who are "not United States persons" and who are not located in the United States. *Id.* at 401. Plaintiffs included lawyers, human rights

5

advocates, and legal organizations that believed their client communications were at risk of interception under FISA. *Id.* The plaintiffs asserted two means for establishing injury in fact: first, that there was an objectively reasonable likelihood that their client communications would be acquired in the future under the law; and second, that they had to engage in costly and burdensome measures to try and reduce the amount of confidential information shared via email with their clients *Id.* at 401–02. According to the plaintiffs, either of these injuries satisfied the injury-in-fact requirement. But the Supreme Court disagreed and concluded that the plaintiffs' alleged injuries were not "certainly impending" and that incurring costs for the additional communication-security measures failed to create an injury; there was thus no live controversy for the Court to decide. *Id.* at 422.

Plaintiffs counter that *Clapper* is not controlling because there is a live case or controversy present here. Plaintiffs contend that, even if the City has yet to issue a fine or penalty, there is a "substantial risk" of the injury occurring in the near term. (Dkt. at 8–10.) Supporting that "substantial risk" standard, they point to *Susan B. Anthony List v. Driehaus*, 573 U.S. 149 (2014), which explained that there needs to be a "substantial risk" of an injury to satisfy injury-in-fact requirements. *Id.* at 158.

At issue in *Susan B. Anthony* was an Ohio law that allowed the imposition of fines against organizations that used "false statements" during a campaign for public office. *Id.* at 151. Driehaus, a former Congressman, sued Susan B. Anthony List, an advocacy organization, in state court and asserted that Susan B. Anthony List lied during an election about Driehaus's political positions. *Id.* at 153–54. In return,

6

Susan B. Anthony List filed a claim in a federal court seeking declaratory and injunctive relief that the Ohio laws violated the First and Fourteenth Amendments. *Id.* After Driehaus lost the election, he declined to press his state action, but Susan B. Anthony List continued its federal action. *Id.* at 155. Susan B. Anthony List noted that it intended "to engage in substantially similar activity in the future" and therefore could face penalties for violating the statute. *Id.*

Concluding that standing existed, the Supreme Court held that a pre-enforcement challenge to a law is acceptable where "there exists a credible threat of prosecution thereunder." *Id.* at 160 (quoting *Babbitt v. Farm Workers*, 442 U.S. 289, 298 (1979)). As the Supreme Court explained, the injury-in-fact requirement for standing was satisfied if there was a "substantial risk" of an injury. *Id.* at 158. Expanding on the reasoning of *Clapper*, the Court held that a future injury may establish standing if the threatened injury *either* is "certainly impending" *or* if there is a "substantial risk" that the harm will occur. *Id.*

As the Seventh Circuit later clarified, the two tests discussed in *Clapper* are not in conflict: a pre-enforcement challenge to an ordinance satisfies the "substantial risk" test where the injury alleged is "actual or imminent, not conjectural or hypothetical" and there is "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute." *Six Star Holdings, LLC v. City of Milwaukee*, 821 F.3d 795, 802 (7th Cir. 2016). Although a "bare statutory violation not affecting the plaintiff does not suffice to show the concrete injury required for Article III standing," *Crabtree v. Experian Info. Sols.,*

*Inc.*, 948 F.3d 872, 878 (7th Cir. 2020), the "threat of financial penalty and other enforcement action is easily sufficient to establish standing to challenge the mandate prior to its enforcement," *Korte v. Sebelius*, 735 F.3d 654, 667 (7th Cir. 2013). *See also Bauer v. Shepard*, 620 F.3d 704, 708 (7th Cir. 2010) ("[T]he existence of a statute implies a threat to prosecute, so pre-enforcement challenges are proper, because a probability of future injury counts as 'injury' for the purpose of standing").

Although the parties offer dueling interpretations of these binding precedents, Plaintiffs have the better of the argument. Defendants contend that, because Plaintiffs' alleged injury (the denial of a Certificate) is "merely possible" and not "certainly impending," *Clapper* compels this Court to find that the Plaintiffs' alleged injury here is too speculative to establish the existence of a live controversy.[3] (Dkt. 27 at 8.) Plaintiffs' rejoinder asks the Court to follow the more recently clarified "substantial risk" test set forth in *Susan B. Anthony*.[4]

---

[3] Defendants also ask the Court to read the Amended Ordinance's Penalty section in full to find that a fine could not issue. But the language of the subsection in question is far from clear, and as is explained in the body of the opinion, Defendants refused to state on the record that they would not seek fines from Plaintiffs. *Compare* Zion Municipal Code § 10-180(h)(3) ("An owner, property agent, or occupant's refusal to permit the city to perform an inspection or re-inspection shall not be considered a violation of this section and shall not result in the issuance of any fines or penalties") *with id.* at § 10-180(h)(1) ("In addition to any other remedy, including, without limitation, remedies at law and in equity, any person violating the [Certificate requirement] shall be fined not more than $750.00 for each day the violation continues nor less than $100.00 for each day the violation continues. Each day a violation continues shall be a separate offense").

[4] In addition to the Supreme Court cases, both parties highlight district court cases that they claim challenge factually similar rental ordinances to the ordinance at issue in this case. Although helpful to understand the background law, both *Hometown Co-op. Apartments v. City of Hometown*, 515 F. Supp. 502, 504 (N.D. Ill. 1981), and *Dearmore v. City of Garland*, 400 F. Supp. 2d 894 (N.D. Tex. 2005), were issued before *Clapper* and *Susan B. Anthony*. They are, therefore, of limited persuasive weight.

8

Although the issue is close, Plaintiffs must prevail on the question of standing. *Susan B. Anthony* allows a plaintiff to establish standing where it can allege a "substantial risk" of injury. *Susan B. Anthony List*, 573 U.S. at 158. For at least four reasons, Plaintiffs' allegations meet this threshold. *First*, Plaintiffs note that, under the language of the Amended Ordinance, they are actively living and renting in violation of law. (Dkt. 25 ¶ 8.) *Second*, based on the City's previous conduct, Plaintiffs have established a reasonable belief that they will be "prosecuted" under the ordinance. (Dkt. 25 ¶¶ 54–55.) Indeed, Plaintiffs have plausibly alleged that the City, without seeking an administrative warrant, imposed a $100,000 fine on another landlord for failure to obtain a Certificate. Plaintiffs attached to their amended complaint receipts of the fines sent to Terry Boone, a landlord the City fined over $100,000 for renting units without a Certificate. (*Id.*) That concrete information demonstrates the City's willingness to fine landlords for operating a rental property lacking a Certificate—and there is no suggestion the City sought an administrative warrant to inspect the residential units before moving directly to the penalty phase.

*Third*, when the Court asked at oral argument whether the City intends to impose fines or penalties under the ordinance, Defendants' counsel declined to rule out that possibility. (5/26/2021 Oral Argument, Dkt. 48.) *Fourth*, and finally, Lozano continues to rent to the Pierces without a Certificate. Under the amended ordinance, this means that potential fines caused by the ongoing unlawful occupancy accrue daily. Only the City's subjective (and possibly impermanent) decision not to enforce its Amended Ordinance stands between Lozano and a significant statutory penalty.

9

(Dkt. 25, Exh. D.) This precarious condition—the maintenance of which depends upon municipal forbearance—is sufficient to create a "reasonable belief" by Plaintiffs that the amended ordinance will be applied against them. Plaintiffs have therefore alleged enough to establish a "live controversy" under the *Susan B. Anthony* "substantial risk" standard.

One final argument by Defendants requires comment. Defendants suggest that the City's right to seek an administrative warrant in lieu of a coercive fine ameliorates Plaintiffs' "substantial risk" of prosecution. (Dkt. 27 at 8.) In Defendants' view, because the City could elect under the Amended Ordinance not to impose fines and instead to seek an administrative warrant, Plaintiffs necessarily lack a cognizable injury. But that argument elides the City's discretion: at any point, the City could choose to bypass the administrative warrant and move directly to levy compounding fees on Plaintiffs. With regard to standing, the administrative warrant option is a chimera that fails to eliminate Plaintiffs' "substantial risk" of injury.

## IV. CONCLUSION

For the reasons set forth, Defendants' Motion to Dismiss is DENIED.

SO ORDERED in No. 19-cv-06411.

Date: September 23, 2021

JOHN F. KNESS
United States District Judge

10