## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| JOSEFINA LOZANO et al. | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) No. 1:19-cv-06411 |
| | ) |
| CITY OF ZION, a municipal corporation, | ) Honorable Judge Kness |
| Mayor BILLY MCKINNEY, | ) |
| Commissioner of Building and Public | ) |
| Property JACQUELINE HOLMES, | ) |
| Director of the Zion Building Department | ) |
| RICHARD IANSON, and Inspector | ) |
| WARREN FERRY, in their official | ) |
| capacities, | ) |
| | ) |
| Defendants. | ) |
| | ) |

## ANSWER OF DEFENDANTS TO
## PLAINTIFFS' SECOND AMENDED COMPLAINT

NOW COME the Defendants, CITY OF ZION, BILLY MCKINNEY,

JACQUELINE HOLMES, RICHARD IANSON, and WARREN FERRY, by and

through their attorneys, KNIGHT HOPPE KURNIK & KNIGHT, LTD., and, for their

answer to the Second Amended Complaint of the Plaintiffs, state as follows:

1. This is a civil rights lawsuit challenging the City of Zion's unconstitutional rental inspection program, which punishes tenants and their landlords for exercising their clearly established Fourth Amendment rights.

**ANSWER:** **Defendants admit that this is a civil rights lawsuit challenging the City's rental inspection program. Defendants deny the remaining allegations.**

2.     The Fourth Amendment requires that a government official obtain consent or an "administrative warrant" before conducting a rental inspection of a tenant's home. See *Camara v. Mun. Court*, 387 U.S. 523, 538–39 (1967). The City of Zion and its officials find this requirement inconvenient, so when tenants in Zion do not consent to allowing city inspectors into their homes, the inspectors do not seek a warrant. Rather, the City threatens the landlord with draconian punishments – fines of $750 per day and a revocation of the right to rent their property. Revocation of a rental license, in turn, robs tenants of the right to legally rent their home. Under this abusive system, landlords must coerce the tenants into "consenting" to avoid these penalties.

**ANSWER:**     **Defendants admit that the Fourth Amendment requires government officials obtain consent or an administrative warrant before conducting a rental inspection of a tenant's home.  Defendants deny the remaining allegations.**

3.     Plaintiffs are landlord, Josefina Lozano, and her tenants, Robert Pierce, Dorice Pierce, and Della Sims. The City of Zion wishes to inspect Plaintiffs' homes, but Plaintiffs do not consent to a search. The City is now threatening Josefina with punitive fines unless she coerces her tenants into "consenting" to searches of their homes.

**ANSWER:     Defendants deny the allegations in this paragraph.**

4.     Plaintiffs filed this action to vindicate their Fourth Amendment rights and to prevent the City from entering their homes without a warrant.

**ANSWER:     Defendants lack knowledge sufficient to form a belief about the truth or falsity of the allegations.**

5.     Following hearings on Plaintiffs' Motion for a Temporary Restraining Order, the City, through its attorneys, agreed not to enforce the original rental inspection code (the "Prior Code") against Plaintiffs for the time being, and to amend that portion of the code with a new ordinance (the "Current Code"). See Orders, ECF Nos. 14, 17. On November 5, 2019, the City amended the Prior Code through Ordinance 19-0-47.

**ANSWER:     Defendants admit the allegations in this paragraph.**

6.     The amendments do not remedy the code's constitutional defects. The Current Code still conditions issuance of the landlord's certificate of compliance on

an inspection of tenant units. But it does nothing to solve the problem that Zion can withhold the certificate of compliance to the landlord if the tenant lawfully exercises her Fourth Amendment rights and refuses to permit the inspection. Nor does it require Zion to obtain a search warrant in the event of such a refusal. Zion can therefore continue its policy and practice of (a) forcing tenants to choose between giving up their Fourth Amendment rights and lawfully renting their home; and (b) punishing landlords with monetary fines or even prohibiting landlords from renting the units at all when their tenants assert their right to be free from illegal searches and seizures.

**ANSWER:** **Defendants deny the allegations in this paragraph.**

7.      Plaintiff Josefina Lozano is a landlord who owns two multi-family buildings at 1503 and 1509 27th St. in Zion, Illinois. She immigrated to the United States from Mexico as a child, became a U.S. Citizen, has operated her own residential rental properties since 1984, and obtained her law degree as a second career in 2004. She respects her tenants and their constitutional rights. Josefina is unwilling to allow Zion to intrude into her tenants' homes without their consent or a warrant. She is committed to standing with her tenants in protecting their constitutional rights.

**ANSWER:** **Defendants deny that Lozano is a landlord who owns the buildings described. Defendants lack knowledge sufficient to form a belief about the truth or falsity of the remaining allegations.**

8.      Plaintiffs Robert and Dorice Pierce are two of Josefina's tenants. They live in Unit #7 at 1503 27th St. in Zion, Illinois. They are each 61 years old. Robert is an accountant, and Dorice is retired. The Pierces have rented from Josefina since 2000. They value their personal privacy and do not consent to the City entering their most private spaces.

**ANSWER:** **Defendants deny that the Pierces are two of Lozano's tenants. Defendants lack knowledge sufficient to form a belief about the truth or falsity of the remaining allegations.**

9.      Plaintiff Della Sims is one of Josefina's tenants. She rents Unit #1 at 1509 27th St. in Zion, Illinois. She is a retired postal worker who began renting from Josefina in 1998. She values her personal privacy, and does not consent to the City entering her most private spaces.

**ANSWER:** **Defendants deny the allegations in this paragraph.**

10.     Defendant City of Zion ("Zion" or the "City") is a township duly organized and existing under the laws of the State of Illinois, with offices located at 2828 Sheridan Rd., Zion, Illinois.

**ANSWER:     Defendants deny that the City is a township. Defendants admit the remaining allegations in this paragraph.**

11.     Defendant Billy McKinney is and was, at all relevant times, either the Mayor and Commissioner of Public Affairs for the City of Zion or the Commissioner of Building, Property & Zoning for the City of Zion charged with implementing the rental inspection program, with an office located at 2828 Sheridan Rd., Zion, Illinois. Mr. McKinney is sued in his official capacity.

**ANSWER:     Defendants admit that Billy McKinney was elected Mayor in 2019, and was the Commissioner beginning in 2015.  Defendants deny each and every remaining allegation contained in Paragraph 11.**

12.     Defendant Jacqueline Holmes is and was, at all relevant times, the Commissioner of Building and Public Property, with an office located at 2828 Sheridan Rd., Zion, Illinois. Ms. Holmes is sued in her official capacity.

**ANSWER:     Defendants admit the allegations in this paragraph.**

13.     Defendant Richard Ianson is and was, at all relevant times, the Director of the Zion Building Department, with offices located at 2828 Sheridan Rd., Zion, Illinois. Mr. Ianson is sued in his official capacity.

**ANSWER:     Defendants admit the allegations in this paragraph.**

14.     Defendant Warren Ferry is and was, at all relevant times, an Inspector for the Zion Building Department, with offices located at 2828 Sheridan Rd., Zion, Illinois. Mr. Ferry is sued in his official capacity.

**ANSWER:     Defendants admit the allegations in this paragraph.**

15.     All actions by Defendants described herein were undertaken under color of state law and caused the deprivation of Plaintiffs' rights protected by the United States Constitution.

**ANSWER: Defendants admit that their actions were taken under color of law. Defendants deny the remaining allegations in this paragraph.**

16. All acts herein of Defendant City of Zion, its officers, agents, servants, employees, and persons acting at their behest or direction, were done and are continuing to be done under the color or pretense of state law.

**ANSWER: Defendants admit the allegations in this paragraph.**

17. This civil rights lawsuit arises under the Fourth and Fourteenth Amendments to the United States Constitution; the Civil Rights Act of 1871, 42 U.S.C. § 1983; and the Declaratory Judgment Act, 28 U.S.C. § 2201.

**ANSWER: Defendants admit the allegations in this paragraph.**

18. This Court has jurisdiction over this case under 28 U.S.C. § 1331 to adjudicate this civil actions arising under the laws of the United States; 28 U.S.C. §1343(a)(3) and 28 U.S.C. § 1343(a)(4) to grant relief under 42 U.S.C. § 1983; 28U.S.C. § 2201(a) to grant declaratory relief; 28 U.S.C. § 2202 to grant preliminary and injunctive relief and damages; and 42 U.S.C. § 1988 to grant Plaintiffs' prayer for relief on recovery of costs, including damages, nominal damages, restitution, and reasonable attorney fees.

**ANSWER: Defendants admit the allegations in this paragraph.**

19. Venue lies in this Court under 28 U.S.C. § 1391.

**ANSWER: Defendants admit the allegations in this paragraph.**

20. In 2015, the City of Zion, Illinois, enacted its rental inspection ordinance.

**ANSWER: Defendants admit the allegations in this paragraph.**

21. The City held a filmed open forum for landlords regarding the newly passed ordinance. Explaining the purpose of the new program, the mayor stated that an "overabundance of non-owner-occupied residential rental properties" was a driving force behind Zion's severe financial distress. See Streaming Video: Rental Property Information (City of Zion, Department of Building) (available at

http://www.cityofzion.com/building-department/rental-property-information/) (last visited Nov. 25, 2019).

**ANSWER:** **Defendants admit that there was an open forum prior to the passage of the ordinance. Defendants deny each and every remaining allegation contained in Paragraph 21..**

22. The mayor found it disquieting that "60% of the residential living spaces in [Zion] are rental" when a healthy city should, in his view, have "23-30%" rental property. *Id.*

**ANSWER:** **Defendants admit that the previous mayor, Al Hill, made these statements. Defendants deny each and every remaining allegation contained in Paragraph 22. .**

23. Citing studies indicating that communities were better with fewer rentals; that high taxes are driven by low-quality, low-income rental housing; and that renters do not care for their properties like homeowners, the mayor stated that he was elected "to change what this town looks like."

**ANSWER:** **Defendants deny the allegations contained in Paragraph 23.**

24. The Prior Code provisions are codified in the Municipal Code of the City of Zion, Illinois § 10-180. Exhibit A.

**ANSWER:** **Defendants admit the allegations in this paragraph.**

25. Exhibit A is a true and correct copy of the Municipal Code of the Prior Code at the time this litigation commenced.

**ANSWER:** **Defendants admit the allegations in this paragraph.**

26. The Prior Code provisions required landlords to obtain "certificates of compliance" in order to lawfully rent properties. Prior Code § 10-180(2). One of the requirements for obtaining a certificate was that the property must be inspected every year, unless all units at the property are found to have no code violations, in which case a two-year certificate was issued. Id. § 10-180(3)(a)(ii).

**ANSWER:** **Defendants admit the allegations in this paragraph.**

27.     These inspections allowed for sweeping action by inspectors who were charged with searching homes for compliance with Zion's "code." Id. § 10-180(5)(b). Zion defines the term "code" broadly—"the Municipal Code of the City of Zion, as amended, all city rules, regulations, and policies, and all state laws, rules, regulations, and policies" "[u]nless otherwise expressly stated or clearly indicated by context . . . ." Id. § 10-180(1).

**ANSWER:** **Defendants admit this paragraph accurately cites the City's Municipal Code, but denies any and all remaining allegations in this paragraph.**

28.     In the event a tenant or landlord failed to consent to one of these inspections, the code reserved to the City "all remedies to secure compliance with this section, including, without limitation, seeking an administrative search warrant or suspending or revoking an owner's certificate of compliance." Id. § 10-180(5)(g) (emphasis added).

**ANSWER:** **Defendants admit the allegations in this paragraph.**

29.     The Prior Code did not "restrict, limit, or alter the city's authority to inspect any property nor impose penalties for violations of the code." Id. § 10-180(8).

**ANSWER:** **Defendants admit the allegations in this paragraph.**

30.     The Prior Code empowered the City to punish noncompliance by a fine ranging from $100 per day up to $750 per day, and "[e]ach day a violation continues [was] a separate offense." Id. § 10-180(9)(a).

**ANSWER:** **Defendants admit the allegations in this paragraph.**

31.     In other words, the Prior Code empowered but does not require the City to seek an administrative warrant to inspect a rental property whose occupant did not consent to a search. Worse, it authorized draconian penalties against the landlords for the tenants' lawful exercise of their Fourth Amendment rights. This not only punished an innocent party but also was a means by which Zion sought to coerce the landlord into forcing tenants to "consent" to unlawful searches.

**ANSWER:** **Defendants deny the allegations in this paragraph.**

32.     It was not an accident that the code provided for punishments for people who exercised their constitutional rights. Zion made full use of these provisions.

**ANSWER:** **Defendants deny the allegations in this paragraph.**

33.     Zion began implementing the rental inspection program in 2016.

**ANSWER:     Defendants admit the allegations in this paragraph.**


34.     When an application to obtain a certificate of compliance was due, the landlord received a letter requesting an application and notifying the landlord that an inspection must be scheduled.

**ANSWER:     Defendants admit he allegations in this paragraph.**


35.     When the landlord submitted the application and the City approved it, an inspector from the Building Department contacted the landlord to schedule an inspection of the rental property.

**ANSWER:     Defendants admit the allegations in this paragraph.**


36.     The tenant was never contacted by the City or the inspector prior to the date of the inspection.

**ANSWER:     Defendants admit the allegations in this paragraph.**


37.     The landlord was expected to inform the tenants when the inspection had been scheduled.

**ANSWER:     Defendants admit the allegations in this paragraph.**


38.     On May 25th, 2016, Defendant Richard Ianson, Director of Building and Zoning, sent Josefina a letter demanding that she submit an application for a certificate of compliance and notifying her that she would need to schedule inspections of her rental properties once the application was approved.

**ANSWER:     Defendants admit the allegations in this paragraph.**


39.     On June 23, 2016, Josefina submitted her application.

**ANSWER:     Defendants admit the allegations in this paragraph.**


40.     On June 29, 2016, the City informed Josefina that her application was incomplete because she had substituted the provided affidavit with her own and instead must sign the affidavit provided by the City.

**ANSWER:   Defendants admit the allegations in this paragraph.**


41.     After receiving a final notice of her incomplete application on July 5, 2016, Josefina reapplied and was approved.

**ANSWER:   Defendants admit the allegations in this paragraph.**


42.     Josefina then scheduled inspections for September 8, 2016, and sent a memorandum informing her tenants of the scheduled inspections and inviting them to let her know if they did not consent to a search of their homes. Exhibit B.

**ANSWER:   Defendants admit Lozano scheduled an inspection for September 8, 2016.  Defendants lack knowledge sufficient to form a belief about the truth or falsity of the remaining allegations.**


43.     Exhibit B is a true and correct copy of the memorandum Josefina sent to her tenants to notify them of the scheduled rental inspection.

**ANSWER:   Defendants lack knowledge sufficient to form a belief about the truth or falsity of the allegations.**


44.     Robert, Dorice, and Della refused to consent to an inspection.

**ANSWER:   Defendants lack knowledge sufficient to form a belief about the truth or falsity of the allegations..**


45.     Each sent a letter to the City of Zion explaining their non-consent to an inspection under the Fourth Amendment and that any punitive action for this refusal to consent would be unconstitutional. Exhibit C.

**ANSWER:   Defendants admit the City received the letters attached as Exhibit C.  Defendants deny each and every remaining allegation contained in Paragraph 45..**


46.     Exhibit C is a true and correct copy of letters sent by Robert, Dorice, and Della to the City of Zion refusing to consent to inspections of their homes.

**ANSWER:** **Defendants admit that Exhibit C is the letter the City received. Defendants deny each and every remaining allegation contained in Paragraph 46..**

47. For three years, the City did not pursue inspections of these three homes. Josefina never received a certificate of compliance for these homes, but the City took no action to prevent her from continuing to rent them.

**ANSWER:** **Defendants admit the allegations in this paragraph.**

48. From 2016 through 2019, Josefina had been having inspections performed for consenting rental properties each year. Josefina also complied with a number of building inspector maintenance requests to bring her properties into code compliance, and she obtained full two-year certificates of compliance for the rental homes that consented to inspections.

**ANSWER:** **Defendants admit the allegations in this paragraph.**

49. Each year from 2016 through 2019, Robert, Dorice, and Della refused to consent to an inspection and sent the same letter to that effect. During that time, the City did not conduct an inspection or obtain an administrative warrant.

**ANSWER:** **Defendants admit the allegations in this paragraph.**

50. The City's approach changed on August 30, 2019. Defendant Inspector Warren Ferry sent threatening letters to Josefina pertaining to her uninspected rentals. She was informed that she had 30 days, no later than 09/29/2019, to comply with the Code by obtaining a rental inspection of Robert, Dorice, and Della's properties. Failure to comply would result in her application being "referred to the City Attorney for review and possible initiation of legal proceedings." Exhibit D.

**ANSWER:** **Defendants admit that Ferry sent the document attached as Ex. D to Lozano on August 30, 2019. Defendants deny the remaining allegations in this paragraph.**

51. Exhibit D is a true and correct copy of the letters sent by Inspector Ferry, informing Josefina of her properties that had not been scheduled for inspection and stating that if an inspection was not scheduled within 30 days then Josefina's application would be submitted to the City Attorney for review and possible initiation of legal proceedings.

**ANSWER:** Defendants admit that the Ex. D is a true and correct copy of the letters to which this paragraph refers.

52.     With burdensome fines for noncompliance or coerced sacrifice of their Fourth Amendment rights imminent, Plaintiffs filed a complaint and moved for a temporary restraining order to prevent the City of Zion from punishing the exercise of their Fourth Amendment rights. After a hearing on September 27, 2019, the Court entered and continued the motion by agreement and further ordered that Zion "shall take no further action against any of the Plaintiffs or Plaintiff Josefina Lozano's properties, including [that Zion] shall not enter or search any of Lozano's properties, … issue any further citations or notices, and . . . shall not levy any additional fines" until the parties could reconvene in court. Order, ECF No. 14.

**ANSWER:** **Defendants admit that Plaintiffs filed a complaint and moved for a temporary restraining order to prevent the City of Zion from punishing the exercise of their Fourth Amendment rights. After a hearing on September 27, 2019, the Court entered and continued the motion by agreement and further ordered that Zion "shall take no further action against any of the Plaintiffs or Plaintiff Josefina Lozano's properties, including [that Zion] shall not enter or search any of Lozano's properties, … issue any further citations or notices, and . . . shall not levy any additional fines" until the parties could reconvene in court. Defendants deny the remaining allegations of this paragraph.**

53.     Zion's threats of fines and coercion of Fourth Amendment rights were not hollow. A landlord in a similar situation to Josefina's, Terry Boone, is an example of how Zion punishes landlords when tenants refuse to consent.

**ANSWER:** **Defendants deny the allegations in this paragraph.**

54.     Eight of Terry's tenants refused an inspection. Instead of seeking a warrant, Zion initiated an Administrative Adjudication against Terry that resulted in a fine of $114,000 − $750 per property per day since he was noticed for lack of compliance. The fines continue to accrue every day the properties are uninspected. Exhibit E.

**ANSWER:** **Defendants admit the allegations in this paragraph.**

55.     Exhibit E is a true and correct copy of the Administrative Adjudication Findings and Order in the case of City of Zion v. Terry Boone, Team Management Properties, LLC.

**ANSWER:   Defendants admit the allegations in this paragraph.**

56.     In the findings of fact for Zion's Administrative Adjudication, the Hearing Officer did not address the Fourth Amendment concerns of Terry and his tenants, nor address the case law cited in tenants' letters to the City. Instead, the officer focused on the power given the City by its own ordinance and belittled Terry's advising "the tenants of their 'rights.'" Exhibit E at 3 (use of quotation marks in original).

**ANSWER:   Defendants admit the allegations in this paragraph.**

57.     The Administrative Adjudication confirmed in writing Zion's position that it has no obligation to comply with the Fourth Amendment: "While the code contemplates that the City may wish to seek an administrative warrant, it reserves to seek out whatever remedy is deemed appropriate under the law." *Id.* at 9 (emphasis added).

**ANSWER:   Defendants admit that this paragraph accurately cites the Order, but deny the remaining allegations in this paragraph.**

58.     Terry pointed out that these fines were blatantly unconstitutional, but the City imposed them anyway.

**ANSWER:   Defendants admit that Terry claimed the fines were unconstitutional and that the City imposed the fines.   The Defendants deny the remaining allegations in this paragraph.**

59.     Terry's fines totaled $114,000.00 – and counting – as a vicarious punishment for his tenants standing up for their rights. Exhibit F.

**ANSWER:   Defendants deny the allegations in this paragraph.**

60.     Exhibit F is a true and correct copy of Terry Boone's adjudication fines.

**ANSWER:   Defendants admit the allegations in this paragraph**.

61.     On October 7, 2019, the Court held a continued hearing on Plaintiffs' Motion for a Temporary Restraining Order. The Court extended its prior ruling until November 15, 2019, stating that "Defendants shall take no further action against any of the Plaintiffs or Plaintiff Josefina Lozano's properties, including the following: Defendants shall not enter or search any of Lozano's properties, Defendants shall not issue any further citations or notices, and Defendants shall not levy any additional fines." Order, ECF No. 17.

**ANSWER:**    **Defendants admit the allegations in this paragraph.**

62.     Zion's counsel "reported that the City of Zion has agreed to review the ordinance at issue and refine it as necessary, and expects to be able to do so within 21 to 35 days." *Id.*

**ANSWER:**    **Defendants admit the allegations in this paragraph.**

63.     On or about November 5, 2019, as a result of this litigation, Zion amended its Prior Code in an attempt to remedy the constitutional defects of its rental inspection program.

**ANSWER:**    **Defendants admit that Zion amended its ordinance on or about November 5, 2019.  Defendants deny the remaining allegations in this paragraph.**

64.     To remove some financial penalties for exercises of Fourth Amendment rights, the Current Code now states "[a]n owner, property agent, or occupant's refusal to permit the city to perform an inspection, or re-inspection … shall not result in the issuance of any fines or penalties." Exhibit A(i), § 10-180(9)(c).

**ANSWER:**    **Defendants admit the allegations in this paragraph.**

65.     Exhibit A(i) is a true and correct copy of the Current Code.

**ANSWER:**    **Defendants admit the allegations in this paragraph.**

66.     This surface change does not render the Current Code constitutional. Zion still makes it illegal to occupy or lease a home unless it inspects the interior of the home – with or without a search warrant – and the punishment for not having an occupancy certificate is still daily monetary fines.

**ANSWER:**    **Defendants deny the allegations in this paragraph.**

67.     To obtain a certificate of compliance, the owner – "in consultation with any occupants" – must schedule an inspection of the residential rental property with the City, and a code official must inspect the residential rental property and make findings of code compliance. Current Code § 10-180(5)(a), (c). The code official is prohibited from issuing a certificate of compliance unless the official makes findings resulting from the inspection. *Id.* § 10-180(5)(c) ("The code official shall issue a certificate of compliance only upon finding…") (emphasis added).

**ANSWER:   Defendants admit the allegations in this paragraph.**

68.     The Current Code states that if "an owner, property agent, or occupant of a residential rental property refuses to either (i) [*sic*] allow the code official to inspect a residential rental property or schedule a time for the code official to inspect the residential rental property within the timeframe described in subsection 10-180(5)(a) the city reserves the right to seek an administrative search warrant in the Circuit Court of Lake County, Illinois solely for the purpose of conducting said inspection." *Id.* § 10-180(5)(g) (emphasis added).

**ANSWER:   Defendants admit the allegations in this paragraph.**

69.     The Current Code still makes it unlawful "for any person to let to another for use or occupancy any residential rental property without a current and valid city-issued certificate of compliance" and makes it unlawful for any person, or to allow any person, "to occupy a residential rental property that does not have a valid city-issued certificate of compliance." Id. §10-180(2)(a), (c), (d).

**ANSWER:   Defendants deny the allegations in this paragraph.**

70.     When a tenant occupies a home without a certificate of compliance under § 10-180(2), this illegal occupancy is still punishable with fines of $750.00 per day, as in the Prior Code. Id. § 10-180(9)(a).

**ANSWER:   Defendants deny the allegations in this paragraph.**

71.     In short, if the tenant lawfully refuses an inspection, then the code official is not required to obtain a warrant to conduct an inspection and remains entitled to withhold the certificate of compliance because no inspection has been conducted, and both the tenant and the landlord of a unit lacking a certificate of compliance remain individually punishable by a fine of up to $750 per day. This remains true notwithstanding the addition of § 10-180(9)(c) because the conduct being penalized with a fine is not the "refusal to permit an inspection or re-inspection" under § 10-180(5) but rather "violating the terms of subsection 10-180(2)" – i.e.,

letting (sub-subsection (a)), occupying (sub-subsection (c)), or allowing a person to occupy (sub-subsection (d)) a "residential rental property" that does not have a "valid city-issued certificate of compliance." *Id.* § 10-180(2). The constitutional infirmity has therefore not been cured by the amendments.

**ANSWER:   Defendants deny the allegations in this paragraph.**


72.    The same problem exists when a tenant does not consent to an inspection, Zion seeks an administrative warrant in response, and the Lake County Circuit Court refuses to issue the administrative search warrant. Under § 10-180(5) of the Current Code, Zion will not issue a certificate of compliance – and the landlord and tenant will be "violating the terms of subsection 10-180(2)" – for the perverse reason that Zion did not have sufficient probable cause to enter the home. This violation, in turn, opens landlords and tenant to daily-accumulating fines and illegal occupancy.

**ANSWER:   Defendants deny the allegations in this paragraph.**


73.    Zion has a demonstrated policy and practice of using rental inspections to impose abusive fines on its citizens, and Josefina still fears she could be subject to monetary financial penalties.

**ANSWER:   Defendants deny the allegations in this paragraph.**


74.    On November 19, 2019, the Court held a continued hearing on Plaintiffs' Motion for Temporary Restraining Order. Zion continued its agreement not to search Josefina's properties, and the Court gave Plaintiffs until November 26, 2019 to file this Second Amended Complaint and gave Defendants until January 7 to respond.

**ANSWER:   Defendants admit the allegations in this paragraph.**


75.    Plaintiffs value their privacy, and they do not want to allow uninvited persons into their homes under any circumstances, but especially if the City does not first obtain a warrant as required by the Fourth Amendment.

**ANSWER:   Defendants lack knowledge sufficient to form a
             belief about the truth or falsity of the allegations.**


76.    Plaintiffs are aware of the steps that Zion has taken to enforce its rental inspection program. They fear that government officials will force their way into their homes, as they have already done to other tenants with the aid of law enforcement.

**ANSWER:** **Defendants lack knowledge sufficient to form a belief about the truth or falsity of the allegations.**

77.     For example, Zion tenant Julia Patterson testified before the City Council on August 6, 2019 that on July 2, 2019, Zion inspectors – who gained access to her unit for the alleged purpose of determining the unit's compliance with the code – reported her to the Department of Children and Family Services ("DCFS") on meritless grounds, unrelated to the ostensible purpose of the inspection. See YouTube Video: City of Zion, Illinois City Council Meeting for August 6, 2019, https://www.youtube.com/watch?v=yRbVvQbRDi0&t=1706s (last visited Nov. 25, 2019).

**ANSWER:** **Defendants admit the allegations in this paragraph.**

78.     Plaintiffs are also fearful of eviction since Zion revokes – or withholds – certificates of compliance as punishment against tenants who assert their Fourth Amendment rights.

**ANSWER:** **Defendants lack knowledge sufficient to form a belief about the truth or falsity of the allegations.**

79.     Plaintiffs fear that they will be subjected to ruinous liability for merely asserting their rights. They are aware that Zion has already imposed six-figure fines on another individual whose tenants asserted their clearly established constitutional rights.

**ANSWER:** **Defendants lack knowledge sufficient to form a belief about the truth or falsity of the allegations.**

80.     Plaintiff Josefina fears bankruptcy and the destruction of her business.

**ANSWER:** **Defendants lack knowledge sufficient to form a belief about the truth or falsity of the allegations.**

81.     Plaintiffs Robert, Dorice, and Della fear illegal tenancy and eviction.

**ANSWER:** **Defendants lack knowledge sufficient to form a belief about the truth or falsity of the allegations.**

82. Plaintiffs fear that they will have no choice but to allow Zion's inspectors into their homes because they cannot risk the imposition of eviction or ruinous liability.

**ANSWER: Defendants lack knowledge sufficient to form a belief about the truth or falsity of the allegations.**

83. Plaintiffs have had to retain counsel to protect their property and privacy from Defendants' illegal attempts to search their homes.

**ANSWER: Defendants deny the allegations in this paragraph.**

84. Plaintiffs have suffered and continue to suffer mental and emotional distress from fear of bankrupting fines or invasion of their property and privacy without their consent or a warrant.

**ANSWER: Defendants deny the allegations in this paragraph.**

85. Plaintiffs endure mental and emotional suffering and distress from coercive pressures applied by the City. The City is pressuring Josefina to strong arm her tenants into surrendering their Fourth Amendment rights so that she can avoid ruinous fines. Her tenants live under the pressure to succumb to warrantless government searches against their will.

**ANSWER: Defendants deny the allegations in this paragraph.**

86. Plaintiffs have suffered an injury to their time including spending many hours compiling documents, conducting interviews with lawyers, which take time from work and family to defend against Defendants' threats.

**ANSWER: Defendants deny the allegations in this paragraph.**

## DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF
### (28 U.S.C. § 2201, *et seq.*)

87. Plaintiffs re-allege and incorporate by reference each and every allegation set forth in paragraphs 1 through 86 above.

**ANSWER: Defendants re-assert and incorporate by reference each and every answer set forth above.**

88. An actual controversy has arisen and now exists between Plaintiffs and Defendants concerning Plaintiffs' rights under the United States Constitution. A judicial declaration is necessary and appropriate at this time.

**ANSWER:** **Defendants deny the allegations in this paragraph.**

89. An official acting under color of state law is liable under 42 U.S.C. § 1983 if he or she took action pursuant to official policy of some nature that caused a constitutional tort.

**ANSWER:** **Defendants admit the allegations in this paragraphs.**

90. Governmental liability may be imposed for a single decision by government policy makers under appropriate circumstances.

**ANSWER:** **Defendants admit the allegations in this paragraph.**

91. Plaintiffs desire a judicial determination of their rights against Defendants as they pertain to Plaintiffs' right to be free from warrantless rental inspections and coerced surrender of their property and privacy rights.

**ANSWER:** **Defendants lack knowledge sufficient to form a belief about the truth or falsity of the allegations.**

92. It is appropriate and proper that a declaratory judgment be issued, pursuant to 28 U.S.C. § 2201 and Fed. R. Civ. P. 57, declaring unconstitutional all relevant portions of the City of Zion, Illinois rental inspection program empowering Defendants to enforce inspections by means other than consent or administrative warrant.

**ANSWER:** **Defendants deny the allegations in this paragraph.**

93. Furthermore, pursuant to 28 U.S.C. § 2202 and Fed. R. Civ. P. 65, it is appropriate and requested that this Court issue preliminary and permanent injunctions prohibiting Defendants from punishing Plaintiffs for exercising their clearly established constitutional rights.

**ANSWER:** **Defendants deny the allegations in this paragraph.**

## Count I
## (Violation of U.S. Const., Am. IV)

94.     Plaintiffs re-allege and incorporate by reference each and every allegation set forth in 1 through 93 above.

**ANSWER:   Defendants re-assert and incorporate by reference each and every answer set forth above.**

95.     The Fourth Amendment prohibits "unreasonable searches and seizures" of people's "persons, houses, papers, and effects" unless consent is given or a proper warrant is issued.

**ANSWER:   Defendants admit the allegations in this paragraph.**

96.     Government intrusion into a home is per se an unreasonable search requiring consent or a warrant.

**ANSWER:   Defendants deny the allegations in this paragraph.**

97.     A rental inspection is a search of a home.

**ANSWER:   Defendants deny the allegations in this paragraph.**

98.     A rental inspection requires consent or a warrant consistent with *Camara v. Municipal Court*, and punitive enforcement measures are forbidden.

**ANSWER:   Defendants admit the allegations in this paragraph.**

99.     The Current and Prior Codes do not require the City to obtain consent or an administrative warrant to conduct a rental inspection.

**ANSWER:   Defendants deny the allegations in this paragraph.**

100.     The Prior Code allowed the City to seek punitive fines and suspend or revoke rental rights when a tenant did not consent to a rental inspection. This violated the Fourth Amendment.

**ANSWER:   Defendants deny the allegations in this paragraph.**

101.    The Current and Prior Codes punish landlords and tenants if the government chooses not to obtain a warrant to inspect by prohibiting the grant of certificates of compliance without an inspection.

**ANSWER:    Defendants deny the allegations in this paragraph.**


102.    The Current and Prior Codes punish landlords and tenants if the government cannot obtain a warrant to inspect by prohibiting the grant of certificates of compliance without an inspection.

**ANSWER:    Defendants deny the allegations in this paragraph.**


103.    The Current and Prior Codes as-applied by Defendants against Plaintiffs have violated and imminently threatens to continue violating the Fourth Amendment.

**ANSWER:    Defendants deny the allegations in this paragraph.**


104.    Unless the rental inspection program and punitive retaliatory measures of the Prior and Current Codes are declared unconstitutional and Defendants, their agents, employees, servants, and representatives are enjoined from applying such measures, Plaintiffs will suffer, or imminently be threatened by, great and irreparable harm.

**ANSWER:    Defendants deny the allegations in this paragraph.**


Respectfully Submitted,


/s/ Michael J. Atkus
MICHAEL J. ATKUS. Attorney #6285666
One of the Attorneys for Defendants CITY OF ZION, BILLY MCKINNEY, JACQUELINE HOLMES, RICHARD IANSON, and WARREN FERRY

## CERTIFICATE OF ELECTRONIC SERVICE

I hereby certify that on November 4, 2021, the foregoing **ANSWER OF DEFENDANTS TO PLAINTIFFS' SECOND AMENDED COMPLAINT** was electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following CM/ECF participants.

Robert Andrew Peccola, rpeccola@ij.org, paralegal@ij.org

Benjamin E. Waldin, bwaldin@eimerstahl.com, fharvey@eimerstahl.com

James W. Joseph, jjoseph@eimerstahl.com, erogers@eimerstahl.com, fharvey@eimerstahl.com

Michael Aaron Albert, albert@dlglawgroup.com

Cynthia Sara Grandfield, grandfield@dlglawgroup.com

K. Austin Zimmer, zimmer@dlglawgroup.com, docketing@dlglawgroup.com

Michael Jude Atkus, matkus@khkklaw.com, lgreenberg@khkklaw.com

William W. Kurnik, bkurnik@khkklaw.com, kstocco@khkklaw.com

/s/ Michael J. Atkus
MICHAEL J. ATKUS. Attorney #6285666

KNIGHT, HOPPE, KURNIK & KNIGHT, LTD.
Attorneys for All Defendants CITY OF ZION,
BILLY McKINNEY, JACQUELINE HOLMES,
RICHARD IANSON, and WARREN FERRY
5600 North River Road, Suite 600
Rosemont, Illinois 60018-5114
Telephone:   847/261-0700
Facsimile:   847/261-0714
E-Mail:      matkus@khkklaw.com